UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.

**DANIEL MONCADA**,

      Plaintiff,

vs.

**LESLIE'S POOLMART, INC.,**
a foreign for-profit corporation,

      Defendant.
_____/

## COMPLAINT AND JURY TRIAL DEMAND

      Plaintiff DANIEL MONCADA, through undersigned counsel, sues Defendant LESLIE'S

POOLMART, INC., a foreign for-profit corporation, and alleges as follows:

      1.      This is an action for declaratory and injunctive relief pursuant to Title III of the

Americans With Disabilities Act, 42 U.S.C. §§12181-12189 ("ADA"), as amended, and 28

C.F.R. Part 36. This is also an action for declaratory and injunctive relief to prevent

discrimination which includes equal access to internet website for services to order Defendant's

merchandise online. This is also an action for declaratory and injunctive relief to prevent the

continuing act of trespass against the Plaintiff's personal property (his handheld mobile

smartphone device, hereinafter referred to as "mobile device"), and for compensatory damages to

Plaintiff for such trespass. Remedies provided under common law for trespass are not exclusive,

and may be sought in connection with suits brought under the ADA.

      2.      This Court has jurisdiction over this case based on federal question jurisdiction,

28 U.S.C. §1331 and the provisions of the ADA. Plaintiff seeks declaratory and injunctive relief

pursuant to 28 U.S.C. §§ 2201 and 2202.  In addition, this Court has supplementary jurisdiction over Plaintiff's common law tort claim pursuant to 28 U.S.C. §1367.

3.      Venue is proper in this Court as all actions complained of herein and injuries and damages suffered occurred in the Southern District of Florida.

4.      Plaintiff DANIEL MONCADA is a resident of the State of Florida, resides within the Southern District of Florida, is *sui juris*, and is disabled as defined by the ADA and ADA Amendments Act of 2008, 42 U.S.C. §12101 ("ADAAA").

5.      Plaintiff is, and at all relevant times has been, suffering from bilateral retinopathy and retina detachment, a permanent eye disease and medical condition that renders him legally blind.   Plaintiff thus is substantially limited in performing one or more major life activities, including, but not limited to, accurately visualizing his world and adequately traversing obstacles.  As such, he is a member of a protected class under the ADA, 42 U.S.C. § 12102(1) - (2), the regulations implementing the ADA set forth at 28 CFR §§ 36.101, *et seq*., and in 42 U.S.C. 3602, §802(h).

6.      As a result of his being legally blind, Plaintiff cannot use his mobile device without the assistance of appropriate and available screen reader software.

7.      Defendant LESLIE'S POOLMART, INC. is a foreign for-profit corporation authorized to do business and doing business in the State of Florida that is in the business of retail sales of swimming pool supplies, parts and products to the public.  Defendant owns and/or operates approximately 850 retail stores throughout the United States, including throughout the State of Florida.

8.      Plaintiff's vision disability limits him in the performance of major life activities, including sight, and he requires assistive technologies, auxiliary aids and services for effective communication, including communication in connection with his use of a mobile device.

9.      Plaintiff frequently utilizes the internet on his mobile device.  Due to the fact that he is legally blind, in order to effectively communicate and comprehend information available on the internet and access/comprehend mobile websites, Plaintiff uses commercially available screen reader software to interface with the various mobile websites.

10.     At all times material hereto, Defendant was and still is an organization which owns and operates a chain of retail pool supply stores under the brand name "Leslie's Swimming Pool Supplies."  Each store is open to the public.  As the owner and operator of these retail stores, Defendant is defined as a "public accommodation" within meaning of Title III because Defendant is a private entity which owns and/or operates "[A] bakery, grocery store, clothing store, hardware store, shopping center, or other sales or rental establishment," per 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).

11.     By virtue of being a retail store open to the public, each of Defendant's stores is a place of public accommodation subject to the requirements of Title III of the ADA and its implementing regulation; 42 U.S.C. §12182, §12181(7)(E), and 28 C.F.R. Part 36.

12.     Defendant controls, maintains, and/or operates an adjunct mobile website called www.lesliespool.com, that is configured for use by mobile devices such as smartphones to access Defendant's internet website.  One of the functions of Defendant's mobile website is to provide the public information on the various locations of Defendant's stores that sell hardware merchandise throughout the United States and within the State of Florida.  Defendant also sells to the public its merchandise and goods through its associated mobile website.

3

13.     Defendant's associated mobile website also services its stores by providing information on its brands of merchandise, tips and advice, editorials, sales campaigns, and events, and other information that Defendant is interested in communicating to its customers.

14.     Since the mobile website allows the public the ability to locate its stores and retail locations, and sells merchandise offered for sale by Defendant and delivered from or offered to be picked up at its stores and physical locations, the mobile website is an extension of Defendant's physical stores.   By this nexus, the mobile website is characterized as a place of public accommodation per 42 U.S.C. § 12181(7)(E), and an extension of Defendant's brick and mortar locations and businesses.

15.     Because Defendant's mobile website is a public store that is on-line, where the public can view and purchase Defendant's offered merchandise, the mobile website is itself a sales establishment, which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(E).   As such, the mobile website must comply with all requirements of the ADA, and must not discriminate against individuals with disabilities and must not deny full and equal enjoyment of the services afforded to the public.

16.     At all times material hereto, Defendant was and still is an organization owning and operating the above-described mobile website, www.lesliespool.com.   Since the mobile website is open through the internet to the public as a retail store and is a place of public accommodation under the ADA, Defendant, as the owner and/or operator of the mobile website, is defined as a "public accommodation" within meaning of Title III, 42 U.S.C. §12181(7)(E) and 28 C.F.R. §36.104(2).   As such, Defendant has subjected itself and the associated mobile website it created and maintains to the requirements of the ADA.

17.     Plaintiff is and has been a customer who is interested in purchasing Defendant's offered merchandise, which is offered at Defendant's physical stores and which is also offered and sold through Defendant's mobile website.

18.     The opportunity to shop for Defendant's merchandise from his home is an important accommodation for Plaintiff because traveling outside of the home as a blind individual is often a difficult, hazardous, and frightening experience.   Defendant has not provided its business information in any other digital format that is accessible for use by blind individuals.

19.     Like most consumers, Plaintiff accesses several mobile websites at a time to compare merchandise and prices. When shopping online, Plaintiff may look at several dozens of mobile websites to compare features and prices.

20.     During the month May 2017, Plaintiff attempted on several occasions to utilize Defendant's mobile website to browse through the merchandise to educate himself as to the merchandise being offered and with the intent of making a purchase through the website.

21.     Plaintiff utilizes screen reader software (hereinafter referenced as "screen reader software"), which when utilized allows individuals who are blind or visually impaired to communicate with mobile websites.   However, Defendant's mobile website contains access barriers that prevent free and full use by blind individuals using keyboards and screen reader software.   These barriers are pervasive and include, but are not limited to: Mislabeled links; content was not presented in a way without losing information and structure; and incorrect description of site images.

22.     Defendant's mobile website also lacks prompting information and accommodations necessary to allow blind individuals who use screen reader software to locate and accurately fill out online forms to purchase Defendant's merchandise from the website.

23.     Plaintiff attempted to locate an "Accessibility Notice" on Defendant's mobile website which would direct him to a webpage with contact information for disabled individuals who have questions, concerns, or who are having difficulties communicating with the business. However, Plaintiff was unable to do so because no such link or notice was provided on Defendant's website.

24.     The fact that Plaintiff could not communicate with or within Defendant's mobile website left him feeling excluded, as he is unable to participate in the same online mobile shopping experience and access to merchandise as provided at the mobile website and as experienced by the non-visually impaired public.

25.     Plaintiff continues to desire to patronize Defendant's mobile website, but is unable to do so as he is unable to effectively communicate with Defendant due to his blindness. Thus, Plaintiff, as well as others with vision impairments and disabilities, will suffer continuous and ongoing harm from Defendant's intentional acts, omissions, policies, and practices as set forth herein unless properly enjoined by this Court.

26.     Because of the nexus between Defendant's retail stores and its mobile website, and the fact that the mobile website clearly requires input from Defendant's retail stores for its operation and use, the mobile website is a place of public accommodation subject to requirements of the ADA.

27.     On information and belief, Defendant has not initiated a Web Accessibility Policy to insure full and equal use of its mobile website by individuals with disabilities.

6

28.     On information and belief, Defendant has not instituted a Web Accessibility Committee to insure full and equal use of its mobile website by individuals with disabilities.

29.     On information and belief, Defendant has not designated an employee as a Web Accessibility Coordinator to insure full and equal use of the mobile website by individuals with disabilities.

30.     On information and belief, Defendant has not instituted a Web Accessibility User Accessibility Testing Group to insure full and equal use of the mobile website by individuals with disabilities.

31.     On information and belief, Defendant has not instituted a User Accessibility Testing Group to insure full and equal use of the mobile website by individuals with disabilities.

33.     On information and belief, Defendant has not instituted a Bug Fix Priority Policy.

34.     On information and belief, Defendant has not instituted an Automated Web Accessibility Testing program.

35.     On information and belief, Defendant has not created and instituted a Specialized Customer Assistance line or service or email contact mode for customer assistance for the visually impaired.

36.     On information and belief, Defendant has not created and instituted on its mobile website a page for individuals with disabilities, nor displayed a link and information hotline, nor created an information portal explaining when and how Defendant will have the www.lesliespool.com website, applications, and digital assets accessible to the visually impaired or blind community.

37.     On information and belief, Defendant's mobile website does not meet the Web Content Accessibility Guidelines ("WCAG") 2.0 Basic Level of web accessibility.

38.     On information and belief, Defendant has not disclosed to the public any intended audits, changes, or lawsuits to correct the inaccessibility of its mobile website to visually impaired individuals who want the safety and privacy of purchasing Defendant's merchandise offered on its mobile website online from their homes.

39.     Thus, Defendant has not provided full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations provided by and through the mobile website, in contravention of the ADA.

40.     Further, public accommodations under the ADA must insure that their places of public accommodation provide effective communication for all members of the general public, including individuals with disabilities such as Plaintiff.

41.     The broad mandate of the ADA is to provide an equal opportunity for individuals with disabilities to participate in and benefit from all aspects of American civic and economic life.     That mandate extends to internet shopping mobile websites, such as the m.acehardware.com mobile website.

42.     On information and belief, Defendant is, and at all times has been, aware of the barriers to effective communication within its mobile website which prevent individuals with disabilities who are visually impaired from the means to comprehend information presented therein.

43.     On information and belief, Defendant is aware of the need to provide full access to all visitors to its mobile website.

44.     The barriers that exist on Defendant's mobile website result in discriminatory and unequal treatment of individuals with disabilities who are visually impaired, including Plaintiff.

45.    Plaintiff has no plain, adequate, or complete remedy at law to redress the wrongs alleged hereinabove, and this suit for declaratory judgment and injunctive relief is his only means to secure adequate and complete redress from Defendant's unlawful and discriminatory practices in connection with its website access and operation.

46.    Notice to Defendant is not required because of Defendant's failure to cure the violations.  Enforcement of Plaintiff's rights under the ADA is right and just pursuant to 28 U.S.C. §§ 2201 and 2202.

47.    Plaintiff has retained the undersigned attorneys to represent him in this case, and has agreed to pay them a reasonable fee for their services.

**<u>Trespass Violations</u>**

48.    Plaintiff utilizes his handheld mobile device to access websites such as the Defendant's www.lesliespool.com mobile website.  Plaintiff uses his mobile device as a method of conveyance of his personal information.  Plaintiff thus stores his personal information and retains his browsing history on his mobile device.

49.    Throughout its mobile website, Defendant has placed forms of software to collect non-public information on the website's user's preferences and internet browsing habits. Specifically, Defendant informs the mobile website user that the user's personal information and browsing history is collected and is used for targeted marketing and advertising. Further, Defendant discloses that any individual who accesses its mobile website and commences to shop on that website is subject to having his or his personal information conveyed to third parties. According to Defendant's mobile website, those third parties include (but may not be limited to): (i) the Defendant's related affiliated companies (without so naming those other companies); (ii) service providers (without so naming the service providers); (iii) other third parties (without so

naming the third parties); (iv) law enforcement officials (if so required to be transmitted by said law enforcement); and (v) to other third-party ad servers.

50.     Because of his blindness, Plaintiff was unable to comprehend Defendant's mobile website; therefore, Plaintiff has had no choice, and likewise no knowledge, of Defendant's installation of data and information tracking software and the collection of the website user's browsing history and analytics placed on the user's handheld device.

51.     Based upon the review of Defendant's mobile website, when a user accesses Defendant's mobile website, Defendant installs software onto the user's handheld device, without the user's advance consent or knowledge.  It is also clear that Defendant has used browser cookies to identify websites that Plaintiff has previously visited by accessing Plaintiff's web browser history.

52.     As such, through its mobile website, Defendant has committed a trespass against the Plaintiff, since the mobile website places software on the Plaintiff's handheld device without Plaintiff's knowledge or consent.

## COUNT I – VIOLATION OF THE ADA

53.     Plaintiff re-alleges paragraphs 1 through 47 as if set forth fully herein.

54.     Pursuant to 42 U.S.C. §12181(7)(E), Defendant is a public accommodation under the ADA because it owns and/or operates the m.acehardware.com mobile website, as defined within §12181(7)(E), and is subject to the ADA.

55.     Pursuant to 42 U.S.C. §12181(7)(E), m.acehardware.com is a place of public accommodation under the ADA because it provides the general public with the ability to purchase Defendant's merchandise online, and have those purchased items delivered to one's home or picked up from one of Defendant's retail stores.  Further, the mobile website also serves

to augment Defendant's stores by providing the public information on the various locations of the stores and to educate the public as to Defendant's available merchandise sold on the mobile website and sold in its stores.

56.     Under Title III of the ADA, 42 U.S.C. § 12182(b)(1)(A)(II), it is unlawful discrimination to deny individuals with disabilities or a class of individuals with disabilities an opportunity to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodation, which is equal to the opportunities afforded to other individuals.

57.     Specifically, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(II), unlawful discrimination includes, among other things, "a failure to make reasonable modifications in policies, practices, or procedures, when such modifications are necessary to afford such goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the entity can demonstrate that making such modifications would fundamentally alter the nature of such goods, services, facilities, privileges, advantages or accommodations."

58.     In addition, under Title III of the ADA, 42 U.S.C. § 12182(b)(2)(A)(III), unlawful discrimination also includes, among other things, "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services, unless the entity can demonstrate that taking such steps would fundamentally alter the nature of the good, service, facility, privilege, advantage, or accommodation being offered or would result in an undue burden."

59.     Defendant's mobile website must be in compliance with the ADA, but it is not, as specifically alleged hereinabove and below.

60.     As a result of the inaccessibility of Defendant's mobile website, individuals with disabilities who are visually impaired are denied full and equal enjoyment of the information and services that Defendant has made available to the public on its mobile website, in violation of 42 U.S.C. §12101. *et seq*, and as prohibited by 42 U.S.C. §12182 *et seq*.

61.     A sample review of just part of the Defendant's mobile website reveals that the website is not functional for users who are visually impaired, including, but not limited to, the following:

a)  Mislabeled links;

b)  Content was not presented in a way without losing information and structure; and

c)  Incorrect description of site images.

*See*, Declaration and Curriculum Vitae of Robert D. Moody, attached as Composite Exhibit "A".

62.     More violations may be present on other pages of the mobile website, which can and will be determined and proven through the discovery process in this case.

63.     Further, Defendant's mobile website does not offer or include the universal symbol for the disabled that would permit disabled individuals to access the website's accessibility information and accessibility facts.

64.     There are readily available, well established guidelines on the internet for making mobile websites accessible to the blind and visually impaired. These guidelines have been followed by other large business entities in making their mobile websites accessible. Incorporating such basic components to make the website accessible would neither fundamentally alter the nature of Defendant's business nor would it result in an undue burden to the Defendant.

65.     Defendant has violated the ADA -- and continues to violate the ADA -- by denying access to its mobile website by individuals, such as Plaintiff, with disabilities who are blind and who require the assistance of interface with screen reader software to comprehend and access internet websites.  These violations within Defendant's mobile website are ongoing.

66.     The ADA and ADAAA require that public accommodations and places of public accommodation ensure that communication is effective.

67.     According to 28 C.F.R. §36.303(b)(1), auxiliary aids and services include "voice, text, and video-based telecommunications products and systems".   Indeed, 28 C.F.R. §36.303(b)(2) specifically states that screen reader software is an effective method of making visually delivered material available to individuals who are blind or have low vision.

68.     According to 28 C.F.R. §36.303(c), public accommodations must furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities: "In order to be effective, auxiliary aids and services must be provided in accessible formats, in a timely manner, and in such a way as to protect the privacy and independence of the individual with a disability," 28 C.F.R. §36.303(c)(1)(ii).

69.     Part 36 of Title 28 of the C.F.R. was designed and is implemented to effectuate subtitle A of Title III of the ADA, which prohibits discrimination on the basis of disability by public accommodations, and requires places of public accommodation to be designed, constructed, and altered in compliance with the accessibility standards established by Part 36.

70.     As alleged hereinabove, Defendant's mobile website has not been designed to interface with the widely and readily available technologies that can be used to ensure effective communication, and thus violates the ADA.

13

71.     As a direct and proximate result of Defendant's failure to provide an ADA compliant mobile website, with a nexus to its brick and mortar stores and physical locations, Plaintiff has suffered an injury in fact by being denied full access to and enjoyment of Defendant's mobile website.

72.     As a result of the inadequate development and administration of the www.lesliespool.com mobile website, Plaintiff is entitled to injunctive relief pursuant to 42 U.S.C. §12133 and 28 C.F.R. §36.303, to remedy the ongoing disability discrimination.

73.     Pursuant to 42 U.S.C. §12188, this Court is vested with the authority to grant Plaintiff appropriate and necessary injunctive relief; including an order to:

a)   Require Defendant to adopt and implement a web accessibility policy to make publicly available and directly link from the homepage of the www.lesliespool.com mobile website to a statement as to the Defendant's policy to ensure persons with disabilities have full and equal enjoyment of the services, facilities, privileges, advantages, and accommodations through its website.

b)   Require Defendant to take the necessary steps to make the mobile website readily accessible to and usable by visually impaired users, and during that time period prior to the www.lesliespool.com mobile website's being readily accessible, to provide an alternative method for individuals with visual impairments to access the information available on the website until such time that the requisite modifications are made, and

c)   Require Defendant to provide the appropriate auxiliary aids such that individuals with visual impairments will be able to effectively communicate with the mobile website for purposes of viewing and locating Defendant's stores and locations, and becoming informed of and purchasing Defendant's merchandise online, and during that time period prior to the mobile

website's being designed to permit individuals with visual impairments to effectively communicate, to provide an alternative method for individuals with visual impairments to effectively communicate for such goods and services made available to the general public through Defendant's website.

74.     Plaintiff is entitled to recover his reasonable attorney's fees, costs and expenses pursuant to the ADA.  To that end, Plaintiff has been obligated to retain the undersigned counsel for the filing and prosecution of this action, and has agreed to pay them a reasonable fee for their services.

WHEREFORE, Plaintiff requests entry of judgment in his favor and against Defendant for the following relief:

A. A declaration that Defendant's mobile website is in violation of the ADA;

B. An Order requiring Defendant to update its www.lesliespool.com mobile website to remove barriers in order that individuals with visual disabilities can access the website and effectively communicate with the website to the full extent required by Title III of the ADA;

C. An Order requiring Defendant to clearly display the universal disabled logo within its website, wherein the logo[1] would lead to a page which would state Defendant's accessibility information, facts, policies, and accommodations.  Such a clear display of the disabled logo is to insure that individuals who are disabled are aware of the availability of the accessible features of the www.lesliespool.com mobile website;



D.  An order requiring Defendant to provide ongoing support for web accessibility by implementing a website accessibility coordinator, a website application accessibility policy, and providing for website accessibility feedback to insure compliance thereto.

E.  An Order directing Defendant to evaluate its policies, practices and procedures toward persons with disabilities, for such reasonable time to allow Defendant to undertake and complete corrective procedures to its mobile website;

F.  An Order directing Defendant to establish a policy of web accessibility and accessibility features for its website to insure effective communication for individuals who are visually impaired;

G.  An award to Plaintiff of his reasonable attorney's fees, costs and expenses; and

H.  Such other and further relief as the Court deems just and equitable.

## COUNT II – TRESPASS

75.   Plaintiff re-alleges paragraphs 1 through 52 as if set forth fully herein.

76.   Plaintiff's tangible personal property, being his mobile device and the personal information and browsing history stored therein, has suffered a trespass by Defendant on each and every date that the Plaintiff has accessed Defendant's mobile website, due to Defendant's employment of software analytics which are present on and through Defendant's mobile website, which the Plaintiff has navigated.

77.   At all relevant times, Plaintiff did not consent to and was unaware that Defendant's mobile website was placing software on his computer due to his inability to effectively communicate with and fully view and access the website.

78.     Plaintiff did not consent to the placement of tracking and information securing software on his mobile device; therefore, Defendant has committed a trespass against Plaintiff by placing such software on his computer without his knowledge or consent.

79.     By the acts described hereinabove, Defendant has repeatedly and persistently engaged in trespass of Plaintiff's personal property in violation of Florida common law against trespass.

80.     Defendant's installation, operation, and execution of software on Plaintiff's mobile device has directly and proximately impaired the condition and value of the Plaintiff's mobile device, thereby causing Plaintiff damages.

81.     At the Defendant's website location, as part of its "Privacy Policy", Defendant states the following:

Information We Collect:

- *Usage Data.* When you use or access any of our Sites, we may collect certain usage data generated by your activities on the Sites, including your purchasing history, pages viewed, number of bytes transferred, hyperlinks clicked, and other actions you take on our Sites. Each of our Sites may also track the URL that you visited before you come to the Site, the URL to which you next go, and your Internet Protocol (IP) address or mobile device identifier.

- *Location Data.* Some of our Sites may collect information about your location, such as the approximate location of your IP address. Unless you provide us with your permission, this location data is collected anonymously in a form that does not personally identify you.

- *Online Information-Gathering Tools.* As with most websites, we use cookies, web beacons, and other online information-gathering tools in connection with our Sites. These tools are intended to make using our Sites easier by, among other things, saving your preferences for you. We may also use cookies to deliver content tailored to your interests. If your browser is set to reject cookies, or if your browser notifies you that you are about to receive a cookie and you reject it, then your use of our Site may not be as efficient as it would be if the cookie were enabled.

- *Third-Party Integrated Services.* We may incorporate third-party ads and other third-party content on our Sites, and integrate other third-party offerings into the Sites, enabling certain such third parties to collect information about you or your online

activities across other websites and over time through your use of our Sites. We may also incorporate Leslie's ads and offerings onto third-party websites, enabling us to collect information about you or your online activities across other websites and over time through your use of websites with Leslie's incorporated ads and/or offerings. Any information collected through such integrated technologies is collected directly by these third parties for use by such third parties and other authorized parties, subject to the privacy policies of those other parties.

How We Use Your Information:

We may use information about you collected through our Sites for a variety of commercial purposes.

Without limitation, we may use such information to:

- administer and improve our Sites and businesses;

- promote our products and services to you, as well as the products and services of our affiliates;

- promote (and enable the promotion of) third-party products and services to you that we think you may find of interest;

- deliver email communications, newsletters, and other correspondence to which you subscribe;

- communicate with you about our contests, sweepstakes and other promotions;

- conduct other marketing activities;

- process and respond to your application for current or future career opportunities;

- process membership requests when you apply or otherwise administer your participation in our programs;

- communicate with you regarding your membership in one of our programs and facilitate the functioning of our programs;

- respond to your inquiries and other correspondence, or request that you provide feedback to us;

- we also use your personal information for our everyday business purposes such as security, payment processing, analytics, operations, fraud detection and prevention, reporting, making back-ups and legal compliance; and

- fulfillment of orders placed through our Sites.

How We Share Your Information:

We disclose to third parties the personal (or other) information collected about you through any of our Sites either (i) when we have your permission to do so or (ii) in any of the following situations (without your permission):

- We may share the information collected about you within the Leslie's family of companies, which means we may disclose the information collected about you to our affiliates (subject to the terms of this privacy policy).

- We may disclose the information collected about you to our third-party contractors and partners in connection with their performing services or other activities in support of the Sites and/or our businesses (which may include, but is not limited to, verifying the accuracy of the information you provide to us, providing customer service, delivering email communications, newsletters, and other correspondence to which you subscribe), or their completing or confirming on our behalf a transaction or series of transactions that you conduct with us.

- As noted above, information about you collected by third-party ads, content or technologies integrated with any of our Sites may be disclosed to such third parties.

- We may disclose the results of aggregated data about you and other users of our Sites without restriction. In these situations, we do not disclose to these entities any information that could be used to personally identify you.

- We may disclose to one or more third parties the information collected about you as part of a merger, acquisition or other sale or transfer of any of the assets or business of Leslie's and/or of any of our affiliates. Please note that the entity receiving such information in connection with one of these transactions may not comply with all of the terms of this privacy policy.

- We may disclose information about you to the government or to other third parties to comply with the law, applicable regulations, governmental and quasi-governmental requests, court orders, subpoenas or other legal process, such as in connection with suspected illegal activity associated with any of the Sites or our business. We reserve the right to release information collected through any of the Sites to law enforcement or other government officials, as we, in our sole discretion, deem necessary or appropriate.

- We may also disclose information about you to third parties if needed to enforce any of the terms of use for one of our Sites or other agreements, or any investigation of potential violations thereof; to detect, prevent, or otherwise address fraud, security or technical issues; to protect against harm to any of the Sites; or to protect our rights, property or safety or the rights, property or safety of our users or others (e.g., to a consumer reporting agency for fraud protection).

- We may also, in certain instances, disclose your personal information when we have reason to believe that it is necessary to identify you, contact you, to advise you of a product recall, detect and protect you or us from fraud or theft, manage information security or bring legal action to protect your rights or the rights of Leslie's or others.

Cookies, Web Beacons, and Other Similar Technologies:

Our Site uses "cookie" and "web beacon" technology. We use cookies and web beacons to identify your device, provide website user authentication, conduct fraud prevention and management services, distinguish you from other visitors, record your IP address and understand your use of our Site, and identify the name of the Web site from which you linked to Leslie's. This information is used for fulfilling contracts with our business partners, and to help us serve you better by improving our website design, as well as our products, services, and promotions. We do not otherwise track any information about your use of other websites. Information obtained through cookies and web beacons may be shared with or obtained by service providers on our behalf.

A cookie is a small data file that is placed on the hard drive of your computer when you visit a website. A "session cookie" expires immediately when you end your session (i.e., close your browser). A "persistent cookie" stores information on the hard drive so when you end your session and return to the same website at a later date, the cookie information is still available. A web beacon is a small string of code that represents a clear graphic image and is used in conjunction with a cookie.

When you visit our Site, we may use both a session and a persistent cookie. This Leslie's-placed cookie may contain information (such as a unique user ID) that is used to track your usage of our Site and in some cases, your email address. A web beacon allows us to capture certain additional types of information about a visitor's actions on a web site, such as a visitor's cookie number, the time, date, duration and number of page views, a description of the page where the Web beacon is placed, and details about any items that were purchased.

The Leslie's-placed cookie allows us to recognize you when you return to our Site and provides you with access to your account information. If you save your information with or order from us, we may also use cookies to monitor and maintain information about your use of our Sites. If you have not saved your information with or ordered from us, we may monitor and maintain information about your use of our Sites in a manner that does not identify you. You can disable cookies at any time by using your browser options; however, if you turn off cookies, we will not be able to track your order or enable you to make a purchase from our Sites. In addition, we will not be able to recognize you as a registered user to allow you access to your account information.

We may use Flash Cookies (also known as Local Stored Objects) or other similar technologies. A Flash cookie is a small data file placed on a computer using Adobe Flash technology that may be built into your computer or downloaded by you to your computer. We use these technologies to personalize and enhance your online experience, facilitate processes, personalize and store your settings. Flash cookies may help our website visitors to, for example, set volume preference associated with a video experience, play games and perform surveys. They help us improve our sites by measuring which areas are of greatest interest to customers. We do not use Flash cookies for marketing or behavioral targeting purposes. Flash cookies are different from browser cookies and the cookie management tools provided by your browser will not remove Flash cookies. Learn how to manage privacy and storage settings for Flash cookies. If you disable Flash cookies or other similar technologies, please be aware that you may not have access to certain features

and   services   that   make   your   online   experience   more   efficient   and   enjoyable.

*Browser Do Not Track Signals*

At this time, our Sites do not support "Do Not Track" preferences that may be available in your browser for letting websites know that you do not want them collecting certain kinds of information. Specifically, if you turn on the Do Not Track setting on your browser, our Sites are not currently capable of following whatever Do Not Track preferences you set.

82.    Defendant's trespass to chattels, nuisance, and interference has proximately caused real and substantial damage to Plaintiff as follows:

a)  By consuming the resources of and/or degrading the performance of Plaintiff's mobile device (including space, memory, processing cycles and internet connectivity);

b)  By infringing on Plaintiff's right to exclude others from his mobile device;

c)   By infringing on Plaintiff's right to determine, as the owner of his mobile device, which programs should be installed and operated on his mobile device;

d)  By compromising the integrity, security, and ownership of Plaintiff's mobile device; and

e)   By forcing Plaintiff to expend money, time, and resources in order to remove the programs that had been installed on his mobile device without notice or consent.

83.    Defendant's actions were taken knowingly, willfully, intentionally, and in reckless disregard for Plaintiff's rights under the law.

WHEREFORE, Plaintiff demands judgment be entered against Defendant for all of Plaintiff's compensatory damages, interest, costs, and such further relief as the Court deems just and equitable.

DATED:  August 25, 2017.


**RODERICK V. HANNAH, ESQ., P.A.**
Counsel for Plaintiff
8751 W. Broward Blvd., Suite 303
Plantation, FL 33324
T. 954/362-3800
954/362-3779 (Facsimile)
Email:  rhannah@rhannahlaw.com


By____*s/ Roderick V. Hannah*_____
          RODERICK V. HANNAH
          Fla. Bar No. 435384

**LAW OFFICE OF PELAYO DURAN, P.A.**
Co-Counsel for Plaintiff
4640 N.W. 7th Street
Miami, FL 33126-2309
T. 305/266-9780
305/269-8311 (Facsimile)
Email: pduran@pelayoduran.com


By ___*s/ Pelayo M. Duran*_____
          PELAYO M. DURAN
          Fla. Bar No. 0146595